STATE OF WEST VIRGINIA

*In re* **D.B.-1, D.B.-2, and I.G.**

**No. 17-0919** (Mingo County 17-JA-25, 26, and 27)

**FILED**

**February 23, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother K.B., by counsel Susan J. Van Zant, appeals the Circuit Court of Mingo County's September 12, 2017, order terminating her parental rights to D.B.-1, D.B.-2, and I.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Diana Carter Wiedel, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights and denying her post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2017, the DHHR filed an abuse and neglect petition against petitioner. The DHHR alleged that D.B.-2's teacher contacted Child Protective Services ("CPS") after the child informed her that I.G. was not at school because he could not awaken his mother that morning. West Virginia State Troopers responded to petitioner's home and attempted to gain access for approximately fifteen minutes by knocking on the doors and windows of the residence. Upon gaining entry, the troopers found a plate with residue, a straw, and prescription bottles that appeared to be used to crush pills. Petitioner's residence was reported to be filthy and roach-infested, with live and dead cockroaches inside the refrigerator. The DHHR noted that petitioner explained that the plate and straw belonged to I.G.'s father, C.G., despite having previously reported to CPS that she made him leave the residence after filing an emergency protective order the month prior. The DHHR also alleged that both D.B.-1 and D.B.-2 reported to the CPS worker that they observed petitioner and C.G. engage in verbal arguments and domestic violence. D.B.-2

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children share the same initials, we will refer to them as D.B.-1 and D.B.-2 throughout this memorandum decision.

reported that "everyone" in the house takes medicines and described watching C.G. take medicine by putting a straw in his nose while petitioner was in the same room. Finally, the DHHR alleged that petitioner had prior CPS involvement when her children were removed from her custody in February of 2010. The petition indicated that petitioner minimally complied with the services provided and regained custody of her children in July of 2011. A CPS case was then opened in April of 2016 and petitioner received individualized parenting and adult life skills classes in her home, a psychological evaluation, and services through Logan-Mingo Area Mental Health. CPS was in the process of closing out those services when it received the February of 2017 referral. A preliminary hearing was held and the CPS worker testified as to the conditions of abuse at the time the petition was filed. The circuit court found that there was probable cause to file the petition and scheduled the adjudicatory hearing.

The circuit court held an adjudicatory hearing in March of 2017 and took judicial notice of the testimony presented at the preliminary hearing. No other witnesses were called. Based upon the evidence previously presented, the circuit court adjudicated petitioner as an abusing parent and held her motion for a post-adjudicatory improvement period in abeyance until she checked into an inpatient treatment program.

In May of 2017, the circuit court held a dispositional hearing during which petitioner requested a post-adjudicatory improvement period. The guardian expressed concerns over petitioner's new boyfriend, as he had caused her to be evicted from her last apartment and admitted to smoking marijuana. However, petitioner had recently completed a short-term inpatient treatment program and was participating in services. As such, the circuit court granted petitioner a post-adjudicatory improvement period and continued the dispositional hearing.

The circuit court held a review hearing in July of 2017, during which the guardian advised that she filed a motion to terminate petitioner's improvement period due to her recent failure to comply with the conditions. The guardian represented that petitioner failed to enter into a long-term inpatient treatment program and that visitation with the children was terminated because she appeared intoxicated during the last visit. Petitioner denied that she was intoxicated but a drug screen conducted that day was positive for methamphetamine. The circuit court terminated petitioner's post-adjudicatory improvement period and scheduled the dispositional hearing.

In August of 2017, the circuit court held a dispositional hearing during which two witnesses testified as to petitioner's failure to correct the conditions of abuse. A CPS worker testified that petitioner's supervised visitation was terminated after she appeared intoxicated during a visit, which occurred after she had completed a twenty-eight-day inpatient program. The CPS worker stated that petitioner attended individualized parenting and adult life skills classes but failed to implement any techniques taught as she continued to test positive for drugs, despite services having been provided in prior abuse and neglect proceedings and throughout the year leading to the filing of the instant petition. The service provider then testified that petitioner had a habit of showing more interest in her boyfriends than in her children. The service provider opined that petitioner could do well on her own but her choice in men was poor and led her to make bad decisions. The service provider testified that petitioner's housing situation had been unstable and that she had lived in four different locations since April. The service provider noted

that petitioner had been receiving services for a long time and that she had not progressed to an acceptable level by that point.

After hearing evidence, the circuit court found that petitioner was presently unwilling and unable to provide adequately for the children's needs; that this was petitioner's third time receiving services to improve her parenting; and that she continued to test positive for controlled substances. The circuit court further noted that petitioner minimally participated in services, continued to show a pattern of bad relationships, and had not provided a stable home for the children. Finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and that termination was in the children's best interests, the circuit court terminated her parental rights in its dispositional order dated September 12, 2017.[2] It is from this order that petitioner appeals.

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights. Specifically, petitioner argues that the circuit court erred in finding sufficient evidence to terminate her parental rights when she made significant improvements to her life and benefitted from services. We disagree. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected includes one in which "[t]he abusing parent . . . ha[s] not

---

[2]The circuit court also terminated I.G.'s father's parental rights in the proceedings below. The father of D.B.-1 and D.B.-2 is deceased. D.B.-1 is currently placed with a foster family and the permanency plan is for adoption in that home. D.B.-2 and I.G. are placed with a relative and the permanency plan is for adoption in that home.

3

responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

Here, the circuit court was presented with ample evidence that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect. Petitioner has received substantial services provided to her over the course of several years and yet continues to behave in the same abusive manner. Petitioner's children were removed from her custody in 2010 and she received services for over one year until she regained custody in 2011. A CPS case was opened in 2016 and petitioner received services throughout that year. Despite being given significant time and resources to correct her parenting skills, a petition was filed against petitioner again in 2017 for nearly identical reasons, indicating that she failed to implement the techniques taught to her through services provided by the DHHR.

Nevertheless, the circuit court granted petitioner a post-adjudicatory improvement period in an effort to help her regain custody of her children. Having participated in such extensive services, petitioner was well aware that her parental rights were at risk and yet continued to test positive for controlled substances in the underlying proceedings, which led to the revocation of her supervised visitation. Further, petitioner failed to maintain suitable, stable housing; exhibited behavior suggesting she cared more about her boyfriends than her own children; and failed to enter a long-term inpatient treatment program as per the circuit court's order. Contrary to petitioner's argument that she made significant improvements in her life, we fail to see that she made any improvements or benefitted from the services provided. While petitioner argues that the circuit court should not have terminated her parental rights, we have held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). As mentioned above, petitioner participated in extensive services on three separate occasions and yet continued to test positive for drugs and failed to maintain suitable housing. The circuit court properly found that petitioner was not likely to correct the conditions of abuse in the near future and that termination of her parental rights was in the best interests of her children. Accordingly, we find no error.

Petitioner also argues on appeal that the circuit court erred in denying her post-termination visitation. In support, petitioner argues that visitation is in the children's best interest and that she has a strong bond with them. Petitioner additionally argues that the DHHR failed to present evidence that she was actually intoxicated at her last supervised visit. However, this Court finds that petitioner's arguments are without merit. There is no evidence in the record that petitioner filed a written motion for post-termination visitation, nor did she orally request it during the dispositional hearing. We have previously held that "[o]ur general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered." *Noble*

4

*v. W.Va. Dep't of Motor Vehicles*, 223 W.Va. 818, 821, 679 S.E.2d 650, 653 (2009) (quoting *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)). As such, we decline to consider this argument on appeal.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 12, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: February 23, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker